(December 22, 1914.)

STATE, Respondent, v. GUST JOHNSON, Appellant.

[144 Pac. 784.]

RAPE—ASSAULT WITH INTENT TO COMMIT—PUBLIC TRIAL—ADMISSION AND REJECTION OF EVIDENCE—INSTRUCTIONS—SUFFICIENCY OF EVIDENCE.

1. The defendant in a prosecution for the crime of assault with intent to commit rape was not deprived of a public trial as provided by art. 1, sec. 13, of the state constitution, and the statutes of the state, when the court in its discretion required all spectators and all persons except those necessarily in attendance to retire from the courtroom during the trial.

2. *Held,* under the facts of this case that the court erred in not permitting the defendant to answer the following question: "How did you and your wife get along upon the ranch? Did you have any difficulty or quarrel?"

3. *Held,* that the court did not err in giving certain instructions to the jury.

4. *Held,* that the court erred in refusing to give the following requested instruction to the jury: "You are also instructed that in order to convict the defendant of the crime charged it will be necessary for you to find that he made an assault upon this young girl and actually intended to use whatever force was necessary to rape or carnally know her, and that he was prevented therefrom by the resistance of or force used by her, the said Anna Johnson, or by some other reason than that of his own inclination or determination to desist therefrom."

5. The evidence *held* insufficient to support the verdict.

APPEAL from the District Court of the Eighth Judicial District for Kootenai County. Hon. Robert N. Dunn, Judge.

The defendant was charged with the crime of assault with intent to commit rape and convicted and sentenced to imprisonment for a term of not less than seven and not more than fourteen years. *Reversed.*

McFarland & McFarland, for Appellant.

It was reversible error for the trial court to make the order for the exclusion of spectators during the trial. (*People v.*

*Yeager*, 113 Mich. 228, 71 N. W. 491; *People v. Murray*, 89 Mich. 276, 28 Am. St. 294, 50 N. W. 995, 14 L. R. A. 809; *People v. Hartman*, 103 Cal. 242, 42 Am. St. 108, 37 Pac. 153; *State v. Dreany*, 65 Kan. 292, 69 Pac. 182; *State v. Osborne*, 54 Or. 289, 103 Pac. 62, 20 Ann. Cas. 627.)

In this class of cases courts and juries should be more particular in requiring the state to prove by sufficient evidence every necessary element of constituting the offense than in almost any other case. (*State v. Baker*, 6 Ida. 496, 56 Pac. 81; *State v. Anderson*, 6 Ida. 706, 59 Pac. 180.)

- J. H. Peterson, Attorney General, J. J. Guheen, T. C. Coffin, and E. G. Davis, Assistants, and N. D. Wernette, County Attorney, for Respondent.

"Public trial," as used in sec. 13, art. 1, of the Idaho constitution, is used in the sense of distinguishing the trial from secret. (Cooley, Const. Limitations, 7th ed., p. 441; Abbott's Trial Brief, Criminal Causes, 2d ed., pp. 160–162; *People v. Swafford*, 65 Cal. 223, 3 Pac. 809; *Benedict v. People*, 23 Colo. 126, 46 Pac. 637; *People v. Hall*, 51 App. Div. 57, 64 N. Y. Supp. 433; *State v. Nyhus*, 19 N. D. 326, 124 N. W. 71, 27 L. R. A., N. S., 489; *Robertson v. State*, 64 Fla. 437, 60 So. 118; *Reagan v. United States*, 202 Fed. 488, 120 C. C. A. 627, 44 L. R. A., N. S., 583.)

The defendant by his failure to object to the order excluding spectators from the courtroom at the time the order was made, will be presumed to have assented thereto, unless he can show that he was prejudiced. (*People v. Douglass*, 100 Cal. 1, 34 Pac. 490; *People v. Bell*, 4 Cal. Unrep. 522, 36 Pac. 94.)

When the rule excluding witnesses is enforced, it is within the discretion of the trial court to take any witness without the operation of the rule. A deputy sheriff, being an officer of the court, is not generally considered as within the rule. (*People v. Nunley*, 142 Cal. 441, 76 Pac. 45; *Brite v. State* (Tex. Crim.), 43 S. W. 342.)

SULLIVAN, C. J.—The defendant was convicted of the crime of intent to commit rape upon his eleven year old

daughter, and sentenced to serve a term at hard labor in the state penitentiary for a period of not less than seven years and not more than fourteen years. The appeal is from the judgment and order denying a new trial.

The action of the court in excluding the spectators from the courtroom during the trial and thus not giving the defendant a public trial is assigned as error, also the action of the court in refusing to admit certain evidence offered by the defendant; in giving and refusing to give certain instructions and the insufficiency of the evidence to justify the verdict and judgment, and in denying appellant's application for a new trial.

The first assignment discussed by counsel for appellant is the action of the court in excluding all spectators from the courtroom during the trial. In that regard the court made the following order: "During the trial of this case, all spectators will be excluded from the courtroom. Before beginning to examine the jury, all spectators will retire. The bailiff will remain at the door and see that nobody comes in or remains where they can hear the proceedings."

Art. 1, sec. 13, of the state constitution provides that in all criminal cases the party accused shall have the right to a speedy and public trial. It is also provided by sec. 7355, Rev. Codes, that the defendant in a criminal case is entitled to a speedy and public trial. It appears that said order was made by the court without the suggestion or request of the defendant, and even had the defendant consented, the question is presented whether he could have waived the right to what he claimed was a public trial.

There seems to be a diversity of opinion on this question. Judge Cooley in his work on Const. Limitations, p. 441, 7th ed., states:

"It is also requisite that the trial be public. By this is not meant that every person who sees fit shall in all cases be permitted to attend criminal trials; because there are many cases where, from the character of the charge and the nature of the evidence by which it is to be supported, the motives to attend the trial on the part of portions of the community

would be of the worst character, and where a regard to public morals and public decency would require that at least the young be excluded from hearing and witnessing the evidences of human depravity which the trial must necessarily bring to light. The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions; and the requirement is fairly observed if, without partiality or favoritism, a reasonable proportion of the public is suffered to attend, notwithstanding that those persons whose presence could be of no service to the accused, and who would only be drawn thither by a prurient curiosity, are excluded altogether.''

Counsel for the state cites many decisions sustaining the views of Judge Cooley above set forth, and counsel for the defendant cites a number of cases, and particularly some from the state of Michigan, which hold directly to the contrary. (See *People v. Yeager,* 113 Mich. 228, 71 N. W. 491.)

In *Reagan* v. *United States,* 202 Fed. 488, 120 C. C. A. 627, 44 L. R. A., N. S., 583, the court held upon this question that, in a prosecution for rape, the defendant was not deprived of a public trial by an order clearing the courtroom of spectators, but permitting all persons connected with the court, either as officers or members of the bar, and all persons in any manner connected with the case as witnesses, etc., to remain.

In cases like the one at bar, where the evidence is of a very immoral and disgusting nature, we do not think the court erred in excluding the general public from the courtroom during the trial. Of course, the friends of the defendant who desired to be present and the officers of the court, including members of the bar, ought not to be excluded; but to exclude the general public who only have a curiosity to hear the revolting details of a rape case, does not deprive a defendant of a public trial as provided by the constitution

and statutes above cited. The court therefore did not err in making said order.

The next assignment of error goes to the action of the court in refusing to admit certain evidence. The girl had testified that the defendant and her mother had frequent quarrels and when the defendant was on the witness-stand he was asked this question: "How did you and your wife get along upon the ranch? Did you have any difficulty or quarrel?" Since the prosecutrix had testified that the father and mother had frequent quarrels, we think the court erred in not permitting the defendant to answer said question, as it might tend to show the ill-feeling of the wife toward the defendant in having him prosecuted.

The following question was propounded to the defendant: "What is the fact, if you know, as to whether or not before you married your wife, she had her father arrested for the same offense that you are arrested for now." Under the state of the record presented here, we think the court did not err in refusing to permit defendant to answer that question. If he wished to show that the wife in urging this prosecution desired to get rid of him by putting him in the penitentiary, and that that was the motive in having him arrested, that evidence might have been admissible; but the proper foundation was not laid for the introduction of such evidence and the court did not err in refusing to permit the defendant to answer said question.

Certain instructions given by the court are assigned as error. After a careful consideration of those instructions, we are satisfied that there was no reversible error in giving them, as they fairly cover the case.

The refusal to give certain instructions is also assigned as error. The court erred in refusing to give requested instruction No. 4, which instruction correctly states the law when applied to the facts of this case, but did not err in refusing to give other requested instructions.

The next assignment of error goes to the insufficiency of the evidence to support the verdict.

The record shows that the defendant had resided at Turner Bay, near Coeur d'Alene City, in Kootenai county, for fifteen or sixteen years; that in December, 1913, his family consisted of his wife, his daughter Anna, aged 11 years (the prosecutrix in this action), and three boys, aged one, five and eight years, respectively. The family lived in a house on a ranch in which they had but two beds. In one bed the mother slept with the baby boy and in the other the father slept with the other two boys and the daughter.

The daughter testified that about two weeks before Christmas, 1913, the defendant began to take improper liberties with her; that he did such acts almost every morning up to and including the 19th of February, 1914, when the act for which the defendant was convicted she testified was committed. She also testified that she told her mother nearly every day about the improper acts of her father and that, regardless of this information, the mother permitted her to continue to sleep in the same bed with the father and the two boys. On February 18, 1914, the defendant took his family to Coeur d'Alene City to attend the wedding of his wife's sister, at whose house the defendant and his family stayed that night. The same sleeping arrangement was observed that night, the father, the girl and the two boys slept together, the mother, babe and grandmother slept together. The girl testified that she slept next the wall and one of the brothers slept between her and her father and the other boy slept at the foot of the bed. She detailed minutely the actions and conduct of her father, but testified positively that he did not have sexual intercourse with her, that "he didn't get it in." She also testified that about two hours after they got up the morning of the 19th, she told her mother of the conduct of her father, and her mother went down town that forenoon and saw the county attorney, and then in the afternoon she went down again to see the county attorney and took the child with her. Thereafter the county attorney and the deputy sheriff called the defendant to the attorney's office and the deputy sheriff testified that in the conversation that followed the defendant admitted that he had done some things to

his daughter that he ought not to have done and would not do them again, but that he intended no harm and denied that he intended to commit rape. This was the only corroboration of the daughter's testimony as to the acts committed by her father. The daughter also testified that the mother and the defendant had a good many quarrels prior to the time the defendant was arrested. The mother of the prosecutrix did not testify in the case.

The defendant testified in his own behalf and denied the testimony of the daughter and denied that he took any indecent liberties with her, and denied any intention of raping her. He also produced at least four witnesses who were neighbors of his and lived near him at Turner Bay for a number of years, who testified that the reputation of the defendant in the neighborhood where he lived was good.

If we concede that all of the acts and conduct of the defendant as testified to by the girl were true, we do not think the testimony is sufficient to sustain the verdict of the jury. The defendant is charged with an assault with intent to commit rape. According to the girl's testimony, the father had her in his power for at least eight weeks, commencing with two weeks prior to Christmas, 1913, and until the morning of February 19, 1914, and could have carried out his intent had he desired to do so; yet the girl testified that he did not accomplish his intent.

While the acts testified to by the girl, if true, show the defendant to be a degenerate, they are not sufficient to convict him of assault with intent to commit a rape, when it so clearly appears that he could have carried out that intention almost any day for eight weeks prior to his arrest. It also seems remarkable that the mother, if she had any regard for the daughter at all, would have permitted her to sleep with the father several weeks after the girl had informed her of the conduct of the father toward her. The evidence shows that she said nothing to the father about those acts and did not attempt to prevent the girl from sleeping with him. The mother and the babe slept in one bed and the father, the two boys and the girl in another. It would seem that if the

mother knew of the father's conduct toward the daughter, she would have had the daughter sleep with her and the babe, or at least not permit her to continue to sleep with the father.

It is a well-recognized fact that such a crime charged against a father by a daughter greatly prejudices the public mind against him, and such charges are so easy to be made and so hard, many times, to disprove, that juries ought to be very careful in convicting a man of such a crime unless the evidence is amply sufficient to prove his guilt beyond a reasonable doubt; especially ought that to be the rule where the defendant himself goes upon the stand and denies the acts constituting the crime. In such a case as that the complainant's testimony ought to be corroborated by reputable evidence or physical facts of the commission of the crime.

In the case at bar the girl was only 11 years of age, and had the defendant committed an assault upon her with intent to commit rape, the state should have been required to produce more substantial corroboration of the prosecutrix than it did before a conviction could be legally had.

For the reasons above given, a new trial must be granted, and it is so ordered.

Truitt and Budge, JJ., concur.