STATE, RESPONDENT, *v.* KEELER, APPELLANT.

(No. 3,740.)

(Submitted February 15, 1916. Decided April 10, 1916.)

[156 Pac. 1080.]

*Criminal Law — Rape — Information — Constitution — Public Trial—Refusal—Prejudice—Presumptions—Evidence.*

Rape—Information—Sufficiency.

1. Failure to charge an assault in an information for rape on a female under the age of consent, and that prosecutrix was a human being, did not render the pleading insufficient.

Same—Evidence of Other Like Offenses—Admissibility.

2. Evidence of acts of intercourse between defendant and prosecutrix occurring within six weeks after the act relied on by the state for conviction under an information for rape, was admissible.

Same—Trial—Remarks by Judge—Discretion.

3. Remarks made by the trial judge during the progress of a criminal trial which did not show an abuse of his discretionary power and duty to see that the witnesses were protected from misrepresentations by attorneys, that their testimony could be understood and the trial conducted with reasonable expedition, were not ground for reversal of the judgment of conviction.

Same—Precautionary Instruction—When Refused not Error.

4. An offered instruction that rape cases are prosecutions attended with great danger, and afford an opportunity for the display of malice and primary vengeance, such charges being easily invented and maintained, and that the jury should hesitate to convict solely on the testimony of the prosecutrix, was properly refused, where there was nothing in the record to indicate that the prosecution was instituted through malice or for private vengeance, and another instruction sufficiently covering the subject had been given.

On question of right of court to exclude public from courtroom during criminal trial, see notes in 9 L. R. A. (n. s.) 277; 12 L. R. A. (n. s.) 98; 27 L. R. A. (n. s.) 487; 44 L. R. A. (n. s.) 583.

And as to right of defendant to public trial, see note in 14 L. R. A. 809.

Same—Trial—Exclusion of Public—Constitution—Reversal ·of Judgment.
5.  In a prosecution for rape, the court made an order that on ac-
count of the nature of the case no one should be allowed in the
courtroom in addition to those then present, and those present, after
once leaving, could not return, court officers, doctors, attorneys and
newspapermen being excluded from the order. *Held* that by an enforce-
ment' of the order the defendant was denied the right to a public trial
guaranteed by section 16, Article III, of the Constitution, to one charged
with crime.  (MR. JUSTICE SANNER dissenting.)

[As to right of court to hear matrimonial action *in camera,* see
note in Ann Cas. 1913E, 639.]

Same—Denial of Public Trial—Prejudice—Presumption.
6.  Where one accused of crime shows' that he was denied a public
trial contrary to the provision of section 16, Article III, of the Con-
stitution, the law imputes prejudice.

Constitution—Construction—Rule.
7.  The provisions of the state Constitution must be construed in the
light of the conditions prevailing in Montana at the date of its adop-
tion.

*Appeal from District Court, Gallatin County; Ben B. Law,
Judge.*

LEWIS KEELER was convicted of statutory rape, and from the
judgment of conviction and an order denying him a new trial,
he appeals.  Reversed and remanded.

*Mr. George D. Pease,* for Appellant, submitted a brief and
argued the cause orally.

The court erred in making an order excluding the public
from the trial of the cause over the objection of the defendant.
The attention of the court is called to two cases upon this sub-
ject, the case of *People* v. *Hartman,* 103 Cal. 242, 42 Am. St.
Rep. 108, 37 Pac. 153, and *People* v. *Murray,* 89 Mich. 276, 28
Am. St. Rep. 294, 14 L. R. A. 809, 50 N. W. 995.  These two
cases distinguish a number of other cases on the same proposi-
tion.  In the *Hartman Case* the court made an order excluding
from the courtroom during the trial of the case all persons
except the officers of the court and the defendant.  In the
Michigan case the court held that the constitutional rights of
Murray were violated by an order of the court to the police
officer stationed at the door of the courtroom that he should
stand at the door and see that the room was not overcrowded, ·
but that all respectable citizens should be admitted and have

an opportunity to get in whenever they should apply. The supreme court of Oregon in the case of *State* v. *Osborne,* 54 Or. 289, 20 Ann. Cas. 627, 103 Pac. 63, follows with approval the case of *People* v. *Hartman,* above. (See, also, *Tilton* v. *State,* 5 Ga. App. 59, 62 S. E. 651; *State* v. *Hensley,* 75 Ohio St. 255, 116 Am. St. Rep. 734, 9 Ann. Cas. 108, 9 L. R. A. (n. s.) 277, 79 N. E. 462.)

The action of the court in making the statements complained of, under the circumstances in which they were made, was unwarranted and uncalled for, and it will be observed, further, that in every instance the action of the court was to either elicit testimony against the defendant or comment upon the evidence unfavorably to the interest of the defendant. While exceptions were not noted by the defendant to the matters above, the same are submitted for the purpose of showing the general attitude of bias and prejudice of the trial judge toward the defendant.

The law does not authorize the trial court to comment upon the evidence and to unjustly criticise counsel, as was done in this case. (*Kirk* v. *Territory,* 10 Okl. 46, 60 Pac. 801.) In *People* v. *Kindleberger,* 100 Cal. 367, 34 Pac. 853, it was said: "The court has no right, except when advising acquittal, to give any expression of its opinion as to the weight of evidence." Comments by the trial judge, in the hearing of jury, on evidence introduced or about to be introduced, giving expressions of his opinion which may tend to influence their conclusions, or weight given to such evidence, constitute error. (*People* v. *Hare,* 57 Mich. 505, 24 N. W. 843; *Garner* v. *State,* 28 Fla. 113, 29 Am. St. Rep. 232, 9 South. 843; *Peeples* v. *State,* 103 Ga. 629, 29 S. E. 691; *People* v. *O'Hare,* 124 Mich. 515, 83 N. W. 279; 12 Cyc. 540, 541.)

There was no proof of venue in the case. The only proof of venue made by the state was that Joseph Reinelt, the father of the prosecuting witness, had a homestead in Gallatin county, Montana. Then all of the evidence of the state was that the alleged offense was committed "in the brush" about a half

mile from the homestead. There was absolutely no evidence introduced that the brush was situated in Gallatin county. The venue of a crime must be established clearly and beyond all reasonable doubt. (*Gosha* v. *State,* 56 Ga. 33; *State* v. *Keeland,* 39 Mont. 506, 104 Pac. 513.)

*Mr. J. B. Poindexter,* Attorney General, and *Mr. J. H. Alvord,* Assistant Attorney General, for Respondent, submitted a brief; *Mr. Alvord* argued the cause orally.

The first error complained of is that the appellant was denied a public trial by the court below. Under a similar order and a quite similar state of facts the supreme court of North Dakota held that there was no error shown. (*State* v. *Nyhus,* 19 N. D. 326, 27 L. R. A. (n. s.) 487, 124 N. W. 71.) Likewise, in *People* v. *Hall,* the supreme court of New York held that the exclusion of the public from certain classes of trials was a matter within the discretion of the court. (*People* v. *Hall,* 51 App. Div. 57, 64 N. Y. Supp. 435.)

We submit that the so-called comments of the court upon the weight and credibility of the evidence and the so-called strictures upon counsel were not error, but were, as was held in *People* v. *Mayes,* 113 Cal. 618, 45 Pac. 861, the exercise of the proper function of the court in the conduct of the trial, especially when it is considered that the court gave cautionary instruction No. 5, and repeatedly admonished the jury as to the effect of his remarks.

Upon the proposition that there was no venue proved: The testimony relating to the *locus* of the crime shows that it was about half a mile north of the Reinelt house, located in section 24, T. 4 N., R. 7 E., and the homestead of Reinelt was described as the S. ½ NE. ¼ and the N. ½ SE. ¼ sec. 24. Reinelt further testified: "I sent the girls out to look for the horses; I sent them over on section 13 and they went right north from my place on to section 13, about a half a mile from my place." It is held that courts take judicial notice of public surveys and the manner in which townships are divided into sections. (*Harrington* v. *Gold-*

*smith,* 136 Cal. 168, 68 Pac. 594; *Albert* v. *City of Salem,* 39 Or. 466, 65 Pac. 1068; *Leadbettor* v. *Borland,* 128 Ala. 418, 29 South. 579; *Bowman* v. *Henry,* 142 Ala. 698, 110 Am. St. Rep. 55, 39 South. 92; *State ex rel. Arthurs* v. *Board,* 44 Mont. 51, 118 Pac. 804.) Hence, they must take judicial notice of the fact that section 13 does lie immediately north and adjacent to section 24 in any township, and since the description of Gallatin county in Chapter 60, Laws of 1913, includes section 13, the conclusion is inevitable that the section 13 referred to by Joseph Reinelt is in Gallatin county. This, we think, disposes of this assignment of error.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

The appellant, convicted of statutory rape, assigns forty-three alleged errors, presenting seven different grounds upon which he claims the judgment should be reversed. These grounds we shall briefly consider in their order:

1. It is contended the information does not state a public of-
[1] fense because, though charging "rape under the age of consent," in that the appellant did on the day named willfully, unlawfully and feloniously have and accomplish an act of sexual intercourse with and upon the complaining witness, then and there a female under the age of eighteen years, to-wit, of the age of thirteen years, and not then and there the wife of the appellant, there was a fatal omission to charge an assault or to aver that the complainant was a human being. Counsel does not argue this matter very strongly, and we commend his discretion in that regard. The purpose of an information is to inform the accused of the nature and cause of the accusation against him. To do this it was not necessary in the present instance to allege an assault; and, as everyone else possessing rudimentary intelligence would know that "rape under the age of consent upon a female [naming her] not the wife," *etc.,* necessarily implies a human being as the victim, we cannot assume that the appellant or his counsel were left in the dark

52 Mont.—14

upon the subject. The information is sufficient. (*People* v. *Gilbert,* 199 N. Y. 10, 20 Ann. Cas. 769, and note 775, 92 N. E. 85.)

2. Complaint is made that the court received evidence of
[2]   other acts of intercourse between the appellant and the prosecutrix occurring within six weeks after the act relied on for a conviction. The admissibility of such evidence in cases of this character is not now open to question. (*State* v. *Harris,* 51 Mont. 496, 154 Pac. 198; *People* v. *Koller,* 142 Cal. 621, 76 Pac. 500.)

3. It is urged that the appellant was not given a fair and im-
[3]   partial trial because of some remarks by the district judge. We have considered all the instances specified, and find that the remarks complained of were elicited by the overzeal of appellant's counsel. We are unable to see that they were inappropriate under the circumstances. It may as well be understood that the trial judge possesses functions somewhat greater than those of a silent moderator, and that it is his right and his duty to see that the witnesses are protected from misrepresentation, that they are understood, and that the trial itself is conducted with reasonable expedition. We do not feel that the presiding judge abused that discretion in the present case.

4. Alleged undue restriction of the right of cross-examination is assigned. Only one instance is specified, and that instance relates to a matter which was wholly and manifestly immaterial.

5. The sufficiency of the evidence to justify the verdict is attacked solely upon the ground of failure to prove the venue. We think it barely possible to deduce from the testimony that the act occurred in Gallatin county as charged, but, since the cause must be remanded for a new trial, further consideration of this matter will be omitted.

6. Complaint is made of the refusal of the following instruction: "You are instructed that this class of prosecutions are at-
[4]   tended with great danger and afford an opportunity for the display of malice and private vengeance. Charges of this kind may be easily invented and maintained, and the jury are

cautioned of the danger of a conviction on the sole testimony of the prosecutrix. And if, after considering the testimony in the case, you have any reasonable doubt of the guilt of the defendant, then it is your duty to acquit the defendant." Without giving any reason or citing any authority, counsel contents himself with the statement that this instruction should be given in every trial for rape. We differ, and question its propriety in any case. The court's instruction No. 10 went as far as any cautionary instruction ought to go, and there is nothing in this record to warrant the suggestion that private malice or revenge were at all involved.

7. The giving of instruction No. 15 is urged as error, but upon the theory that other acts of intercourse than the one alleged were inadmissible. As this theory is wrong, the objection must fall.

8. The principal ground of complaint is that the defendant [5] was denied a public trial. This cause was brought to trial on November 19. On the morning of November 20 a jury was secured, and, when the first witness was called, the following proceedings took place:

"The Court: On account of the nature of the case the bailiffs are instructed not to allow any one else in the courtroom. Those who are in the courtroom now may remain until they get ready to retire, but after you once leave you cannot return, and no one else will be allowed to come in.

"Mr. Pease: We object to your Honor's excluding the public from a trial of this cause, and ask that your Honor admit all persons of mature age to witness the trial or to be present at this trial if they so desire.

"The Court: The request is denied. This rule is not meant, however, to apply to officers of the court and newspapermen. If the defendant wants the newspapermen in, let them in. I will except newspapermen; that is, if the defendant wants them; and, if he does not want them, we will let them stay out."

The trial was not concluded until November 21. In the minutes of the court for the 20th, approved and signed by the judge who made the order, is this recital:

"Upon application of the county attorney all persons except court officers, attorneys, doctors and reporters are excluded from the courtroom."

It would seem that the members of this court ought to be able to determine from this record whether a reasonable representation of the general public was or was not permitted to witness the trial. If necessary, we would assume that the court enforced the order as made; but the minute entry furnishes ample proof of that fact. We will not assume, however, that the spectators present when the order was made, on the morning of November 20, stayed in the courtroom continuously throughout the day, throughout the night following, and so much of the 21st as elapsed until the trial was concluded. The order recites that it was made "on account of the nature of the case." The order is inconsistent in itself. If there was anything in the nature of the action or in the evidence which might tend to corrupt the morals, it would seem that the same protection was due to those present when the order was made, as to others who might seek admission. Just why those then present were permitted to stay while others similarly situated were excluded is nowhere explained. In our judgment, the order was made capriciously, or it is to be treated as excluding the public from the trial for no other reason than that in the judgment of the court the evidence adduced would be unfit for people of mature age to hear. We are bound to accept the latter of these, alternatives, and, though the motive which prompted the order may have been ever so worthy, the order itself is indefensible.

The Constitution declares that in all criminal prosecutions the accused shall have the right to a public trial. (Sec. 16, Art. III.) Just what is meant by a public trial has been the subject of some discussion; but, with a single exception, we undertake to say that no court of last resort in this country has ever sustained an order of the character of the one before us, when timely objection to it was interposed.

*People* v. *Hall,* 51 App. Div. 57, 64 N. Y. Supp. 433, by an intermediate court of New York, is cited to sustain the lower

court here. In making the order the court in that case said to counsel for the defendant: "If there is any person   *   *   * you desire to have in the courtroom for the protection of your client's rights, the court has no intention of excluding any such person." We are also informed in the opinion that: "During the trial persons were admitted on the suggestion of the defendant's counsel, and the court made it plain that any people the defendant desired to attend would not be excluded." Further in the course of the opinion the court said: "That the protection of a public trial must be given to every defendant charged with a crime is obvious. No court in this nation has ever held otherwise, so far as I am able to ascertain. That principle must be held unimpaired, but its retention does not entirely wrest from the trial judge the discretion to conduct the trial consonant with good morals, common decency, and in an orderly manner." Whatever else may be said of certain of the court's observations, the facts differentiate the New York case from the one before us.

In *Reagan* v. *United States,* 202 Fed. 488, 44 L. R. A. (n. s.) 583, 120 C. C. A. 627, the circuit court of appeals for the ninth circuit approved an order excluding the public from a certain trial for no other reason than as stated by the trial judge: "I believe many are here out of morbid curiosity; second, I feel that the jurors in the box can listen to the testimony better if not bothered by the people in the courtroom; and, in the third place, I am not feeling good myself this morning, and I can listen to the testimony of the witnesses and objections of counsel better than if I am bothered with noise in the courtroom." After referring to some of the authorities, the court of appeals disposed of the question and said: "We think the better doctrine is that it is not reversible error to exclude the spectators as was done by the order of the court in the case at bar, when there is no showing whatever that the defendant was prejudiced thereby, or deprived of the presence, aid, or counsel of any person whose presence might have been of advantage to him." Just how a defendant could show that he was prejudiced by an order excluding the public or that the presence of a particular

person or of the public could have been of advantage to him is not disclosed, and such reasoning has been condemned by the courts everywhere. With equal propriety the court might deny a defendant charged with a felony the right to a trial by a jury, and then insist that the defendant, found guilty by the court, must show prejudice by demonstrating that a jury would have reached a different result.

The Constitution guarantees- to a defendant charged with [6] crime, whether innocent or guilty, a public trial, and when the right is denied him, he has not had a fair and impartial trial within the meaning of the Constitution, and all that can be required of him is that he make known the fact of the denial, and the law imputes prejudice.

The only decision by a court of last resort approving an order which had the effect of denying a public trial to a person charged with crime is to be found in *State* v. *Johnson,* 26 Idaho, 609, 144 Pac. 784. The order of the trial court was that: "During the trial of this case all spectators will be excluded from the courtroom." And in approving it the supreme court said: "In cases like the one at bar, where the evidence is of a very immoral and disgusting nature, we do not think the court erred in excluding the general public from the courtroom during the trial. Of course, the friends of the defendant who desired to be present and the officers of the court, including members of the bar, ought not to be excluded; but to exclude the general public who only have a curiosity to hear the revolting details of a rape case does not deprive a defendant of a public trial as provided by the Constitution and statutes above cited." If the trial court employs the term "spectators" in its common, ordinary acceptation, then any friend of the defendant present merely as a looker-on, an observer, or a witness to the proceedings was excluded in violation of the rule which the court announces, and there is nothing in the opinion to indicate that any different meaning was intended to apply. Who shall determine whether a spectator is drawn to the courtroom by idle curiosity or by interest? What test shall be applied and what shall con-

stitute interest sufficient to justify his presence? Why should an exception be made in favor of a friend of the defendant while the taxpayer, who is interested to know how the public servants—the judge, the county attorney, the sheriff, *etc.*—perform their work, is excluded? And why make an exception in favor of members of the bar who are not interested in the trial of the case. Is it because lawyers are presumed to be immune against the influence of testimony "of a very immoral and disgusting nature," or is it because members of the legal profession enjoy some special privilege not open to the laymen? The bare statement of such propositions is their own refutation.

In *State* v. *McCool,* 34 Kan. 617, 9 Pac. 745, the court, at the instance of the county attorney, requested all ladies present to leave the courtroom, as the public prosecutor was about to refer to evidence "unfit for ladies to hear." The alleged misconduct of the county attorney in making the request, and not the invasion of the defendant's constitutional right by the court, was the ground of error assigned, and the opinion proceeds upon that theory, and does not discuss the question of constitutional law.

*Robertson* v. *State,* 64 Fla. 437, 60 South. 118, and *State* v. *Nyhus,* 19 N. D. 326, 27 L. R. A. (n. s.) 487, 124 N. W. 71, are sometimes cited as authority for excluding the public from the trial of a criminal case, but neither supports such doctrine. In the first case, court officers, witnesses, the jurors, attorneys, the parties and "all persons directly interested in the case" were allowed in the courtroom, while in the latter the jurors, officers of the court, attorneys, litigants and their attorneys, witnesses, and "any other person or persons whom the several parties may request to remain" were permitted to be present.

But, whatever may be said of these decisions or of the views entertained elsewhere, this court ought not to give to our own Constitution such a construction as will sterilize its most vital parts. Article III is popularly referred to as our Bill of Rights; but, if the power to annul its provisions is vested in the district courts, then the appellation is a misnomer. These

guaranties were not intended as mere glittering generalities, but to serve useful and practical ends. With equal propriety might the court have denied this defendant the right to bail, the right to counsel, the right to process to compel the attendance of witnesses in his behalf, or the right to trial by jury. It was never intended that these guaranties might be ignored, set aside or evaded.

The courts quite generally, though not uniformly, hold that this provision for a public trial is so far for the personal benefit of the accused that he may waive it, and that he does waive it by failing to object to the order of exclusion (*People* v. *Swafford,* 65 Cal. 223, 3 Pac. 809; *Benedict* v. *People,* 23 Colo. 126, 46 Pac. 637; *Dutton* v. *State,* 123 Md. 373, 61 Atl. 417; *State* v. *Nyhus,* above), or by requesting the order himself. (*Carter* v. *State,* 99 Miss. 435, 54 South. 734.) The provision is to be given a reasonable construction. It is not to be assumed that it was intended to impose senseless or impossible conditions. When the authorities have made reasonable provision for a courtroom, complaint cannot be made that it has not seating capacity sufficient to accommodate the entire population of the county; nor can complaint be made of an order which closes the doors after the courtroom is filled. (*Myers* v. *State,* 97 Ga. 76, 25 S. E. 252; *State* v. *Brooks,* 92 Mo. 542, 5 S. W. 257, 330; *Jackson* v. *Commonwealth,* 100 Ky. 239, 66 Am. St. Rep. 336, 38 S. W. 422, 1091; *Kugadt* v. *State,* 38 Tex. Cr. 681, 44 S. W. 989.) And this provision is to be construed with others. The same Constitution which guarantees a public trial creates the district courts of this state and clothes them with the powers necessary to preserve order and perform their allotted functions with becoming dignity and decorum, and therefore the exclusion of persons for disorderly conduct or because they impede the due administration of the law, is justifiable. (*Grimmett* v. *State,* 22 Tex. App. 36, 58 Am. Rep. 630, 2 S. W. 631; *Lide* v. *State,* 133 Ala. 43, 31 South. 953; *State* v. *Callahan,* 100 Minn. 63, 110 N. W. 342.) Upon the same principle the courts may protect themselves, their officers, litigants and interested parties,

from characters dangerous because of their disposition, their habits or physical condition. And it may be assumed that such courts have the power, upon altogether different grounds, to exclude minors under certain circumstances, though that question is not before us.

Whatever be the history of the origin of this guaranty, the [7] provision of our state Constitution is to be construed in the light of the conditions prevailing in Montana at the date of its enactment in 1889. (*State ex. rel. Jackson* v. *Kennie,* 24 Mont. 45, 60 Pac. 589.) If a trial from which all are excluded except court, jury, witnesses, counsel, defendant and court officers, including a public stenographer who records the entire proceedings, constitutes a public trial, then this provision is meaningless, and does not guarantee anything; for it must have been understood by its framers and by the people who enacted it that the persons designated above 'would of necessity be in attendance upon the trial of every felony case at least, as the constituents of the judicial machinery then recognized by law. It must be that the framers of our fundamental law understood that, in order for a trial to be public, the attendance cannot be limited to those persons whose presence would be necessary in order to conduct the trial. It has always required something more than this to constitute a public trial, and to this fact our legislatures have added emphasis.

Long before the Constitution was adopted the statutes declared: "The sittings of every court of justice shall be public except as provided in the next section." (Sec. 544, First Div., Comp. Stats. 1887.) The one exception mentioned the trial of an action for divorce. (Sec. 545, First Div., Comp. Stats. 1887.) In 1895 the exception was broadened to include as well the trials of actions for criminal conversation, seduction and breach of promise of marriage (secs. 100, 101, Code Civ. Proc. 1895), but all within the exception are civil actions; and this legislative declaration is subject to the rule, "*Expressio unius exclusio alterius.*" The Constitution has declared for public trials in criminal cases, and the legislature has said, in effect,

that except in the civil actions enumerated, the doors of the courtroom shall be open during all the sittings of the court, and that the power does not exist anywhere to exclude from the courtroom any one *sui juris* who comes into the presence of the court when there is accommodation for him, and who conducts himself in a becoming manner.

In our judgment, the purpose of this constitutional provision is threefold. Primarily it is for the benefit of the accused— to afford him the means of proving a fact with reference to some question of procedure which it may become necessary for him to prove in order to protect his rights, and to see that he is not unjustly condemned. (*State* v. *Osborne,* 54 Or. 289, 20 Ann. Cas. 627, 103 Pac. 62.) But it likewise involves questions of public interest and concern. The people are interested in knowing, and have the right to know, how their servants—the judge, county attorney, sheriff and clerk—conduct the public's business. As was said by the supreme court of California: "In this country it is a first principle that the people have the right to know what is done in their courts." (*In re Short-ridge,* 99 Cal. 529, 37 Am. St. Rep. 78, 21 L. R. A. 755, 34 Pac. 227.)

"The right to have the courts open is the right of the pub-lic." (*State* v. *Copp,* 15 N. H. 212.) But the public is inter-ested in every criminal trial that court officers and jurors are kept keenly alive to a sense of their responsibility and the im-portance of their functions, and interested spectators by their presence are the most potent influence to accomplish this desired end. (Cooley's Const. Lim., 2d ed., 441.) To the credit of our courts it may be said that the question before us has seldom arisen, but, when it has, the authorities with singular unanimity have upheld the right guaranteed by the Constitution, and have given such construction to the guaranty as vitalizes it and makes it of practical, not merely theoretical, value. (*People* v. *Mur-ray,* 89 Mich. 276, 28 Am. St. Rep. 294, 14 L. R. A. 809, 50 N. W. 995; affirmed in *People* v. *Yaeger,* 113 Mich. 228, 71 N. W. 491; *State* v. *Osborne,* above; *State* v. *Hensley,* 75 Ohio

St. 255, 116 Am. St. Rep. 734, 9 Ann. Cas. 108, 9 L. R. A. (n. s.) 277, 79 N. E. 462; *Tilton* v. *State,* 3 Ga. App. 59, 62 S. E. 651; *People* v. *Hartman,* 103 Cal. 242, 42 Am. St. Rep. 108, 37 Pac. 153; *Williamson* v. *Lacey,* 86 Me. 80, 25 L. R. A. 506, 29 Atl. 943.)

Because of the error committed in denying the defendant a public trial, the judgment and order are reversed and the cause is remanded for a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY concurs.

MR. JUSTICE SANNER: I find myself unable to assent to the reversal of this case. Assuming, for the moment, that the order of exclusion was indefensible, the mere making of it would not be reversible error in the absence of a showing that it was so enforced as to actually invade the appellant's right to a public trial; and, deeming the minute entry to be nothing more than the clerk's version of the order itself, the terms of which appear at large in the trial proceedings, I can discern no such showing in this record.

The section of our Constitution in which the right to a public trial is recognized (sec. 16, Art. III) deals with rights which are to obtain "in all criminal prosecutions," and these rights, stated as *in pari materia* and without restriction, except as to the place of trial, are to be considered in the same way. They are to be taken as without restriction, or each is to be construed with reference to its origin, to the protection it was meant to afford, and to the conditions annexed to its observance. That some of them cannot be taken as without restriction is conceded everywhere, this state included. The right to meet the witnesses face to face is not absolute, but is subject to certain exceptions, such as dying declarations, documentary evidence and testimony given on a previous hearing of the same cause by a witness who has since died or left the jurisdiction (129 Am. St. Rep. 23 *et seq.*) ; the right to process to compel the attendance of witnesses may be limited as to the number of such witnesses,

and is limited in all cases by the state line so far as compelling their attendance is concerned; the right to a speedy trial is uniformly interpreted to require the accused to wait until information or indictment can be filed, until the prosecution has had a reasonable time to prepare its case, and until the court and public officers can, without extraordinary efforts, diligence, or exertion, get around to its consideration (*United States* v. *Fox*, 3 Mont. 512; *State* v. *Conrow*, 13 Mont. 552, 35 Pac. 240); and, finally, the right to an impartial jury is held to mean a jury composed of persons whose impartiality, as measured by legal standards, has been established by legal means, and not persons who are without any psychological unfitness.

That the right to a public trial is to be similarly treated and cannot be applied "in all criminal prosecutions" follows from the admission that occasions may arise when the accused, though in no wise responsible, may have to submit to a partial or a total exclusion of the general public, as, in the cases cited approvingly above, where the judge has lost control of his audience (*Grimmett* v. *State*), where the audience applauds (*Lide* v. *State*), where the mere presence of the audience, though orderly, tends to embarrass the prosecuting witness so that she cannot tell her story (*State* v. *Callahan, supra*). It is also suggested, and I think with reason, that under certain other circumstances trial courts may exclude minors; doubtless because, as stated by Cooley, "a regard to public morals and public decency would require that at least the young be excluded from hearing and witnessing the evidences of human depravity." (Const. Lim., 7th ed., p. 441.) But minors are certainly a part of the public, and the difference in intelligence, in moral susceptibility, and in capacity to be of benefit by his presence is not noticeably less in a person the day before than it is the day after he attains majority.

The essence of the matter, as I see it, is that courts, charged with the administration of justice, are engaged in moral conservation of the highest order and rest under no obligation whatever to become centers of moral infection in order that the trial

may be said to be public, any more than they rest under the obligation to make extraordinary efforts to take up the trial in order that it may be said to be speedy. This provision of our Constitution is simply a reiteration and application to this state of the like provision found in the Sixth Amendment to our national Constitution. It had its origin in an age when stenographers were unknown; when newspapers were few and under restrictions. The abuses of secret 'or "star chamber" proceedings conducted for political ends caused its formulation, and its object is to prevent a recurrence of such abuses. It ought not to be made an avenue for the escape of obvious guilt in a case which bears no sort of resemblance to these conditions, where, protected by the stenographic record, the newspapers, and the presence of such persons as were permitted to remain, no chance for secrecy was possible.

To my mind, the order for which this cause is to be reversed was a proper one, based upon grounds far more tenable than any inability or indisposition of a judge to preserve order in his courtroom. The record shows that the testimony was demoralizing in character, and that the presiding judge knew it would be so, from the trial of a companion case just concluded. Apart from those occasions when the maintenance of order or the protection of the accused himself requires the courtroom to be cleared, there is authority as well as reason for the view that the right to a public trial is not infringed if from a regard to public morals and public decency such an order is made in a proper case, and this is particularly true where the order is not absolute and does not result in a secret trial, "notwithstanding that those persons whose presence could be of no service to the accused and who would only be drawn thither by a prurient curiosity are excluded altogether." (Cooley's Const. Lim., 7th ed., 441; *Benedict* v. *People,* 23 Colo. 126, 46 Pac. 637; *Reagan* v. *United States,* 202 Fed. 488, 44 L. R. A. (n. s.) 583, 120 C. C. A. 627; *State* v. *Johnson,* 26 Idaho, 609, 144 Pac. 784; *People* v. *Hall,* 51 App. Div. 57, 64 N. Y. Supp. 433; *State* v. *McCool,* 34 Kan.

617, 9 Pac. 745; *Robertson* v. *State,* 64 Fla. 437, 60 South. 118; *State* v. *Nyhus,* 19 N. D. 326, 27 L. R. A. (n. s.) 487, 124 N. W. 71; *People* v. *Swafford,* 65 Cal. 223, 3 Pac. 809; *People* v. *Kerrigan,* 73 Cal. 222, 14 Pac. 849.)