(124 N. W. 64.)

---

THE STATE OF NORTH DAKOTA v. HENRY NYHUS.

Opinion filed December 10, 1909.

Criminal Law — Public Trial — Exclusion of Public from Court Room.

1. On a trial on a charge of rape, the making and enforcement of an order excluding all persons from the courtroom (after the jury was impaneled, and until the argument to the jury commenced) except "all jurors, officers of the court, including attorneys, litigants, and their attorneys, witnesses for both parties, and any other person or persons whom the several parties to the action may request to remain," does not deprive the defendant of a public trial within the statutory and constitutional provisions giving persons accused of crime the right to a "speedy and public trial."

Criminal Law — Cross-Examination — Questions as to Other Offenses.

2. On a trial for the offense of rape, it is beyond the limits of proper cross-examination to permit the accused to be asked as to former arrests for other offenses, without the opportunity being given by the questions to answer as to whether he was guilty of the offense for which such former arrest or arrests were made. State v. Kent, 5 N. D. 516, 67 N. W. 1052, 35 L. R. A. 518, followed.

Criminal Law — Remarks of Porescuting Attorney.

3. On a trial for the offense of rape, it is prejudicial misconduct for the attorney for the prosecution in addressing the jury, to urge

a conviction "in view of the fact that you have before you two girls whose lives have been ruined by this defendant," etc.

**Criminal Law — Remarks of Counsel — Instruction of Court Thereon.**

4. Such statement to the jury is not rendered harmless or not prejudicial by a general caution in the instructions to the jury that misstatement of the evidence by the attorneys should be disregarded, and the issue determined from the evidence alone.

Appeal from District Court, Steele county; *Pollock, J.*

Henry Nyhus was convicted of the crime of rape, and appeals.

Reversed.

*Skulason & Burtness* and *Chas. A. Lyche,* for appellant.

Accused must be accorded a speedy public trial. Cooley on Const. Lim. (6th Ed.) 379; People v. Murray, 50 N. W. 995; People v. Yeager, 71 N. W. 491; State v. Hensley, 75 Ohio St. 255, 9 L. R. A. (N. S.) 277; People v. Hartman, 103 Cal. 242, 37 Pac. 153.

Reference to supposed collateral crime is improper. Territory v. O'Hare, 1 N. D. 30, 44 N. W. 1003; State v. Kent, 5 N. D. 557, 62 N. W. 631; State v. Roxum, 8 N. D. 548; State v. Ekanger, 8 N. D. 559; Van Bokkelein v. Berdell, 29 N. E. 254; Roop v. State, 34 Atl. 749; Carr v. State of Arkansas, 43 Ark. 99; Bates v. State, 30 S. W. 890; People v. Gay, 7 N. Y. 378; Stanley v. Aetna Insurance Co., 66 S. W. 432; People v. Hamblin, 8 Pac. 687; People v. Silva, 54 Pac. 146; In re James' Estate, 57 Cal. 578; People v. Warren, 66 Pac. 212; State v. Nussenholtz, 55 Atl. 589; State v. Burton, 43 Atl. 254; Germinder v. Machinery Mutual Ins. Ass'n of Waterloo, 94 N. W. 1108; State v. Brown, 69 N. W. 277; Ashcraft v. Commonwealth, 60 S. W. 931; Welch v. Commonwealth, 60 S. W. 185; Johnson v. Commonwealth, 61 S. W. 1005; Bonaparte v. Thayer et ux. 52 Atl. 496; State v. Renswick, 88 N. W. 22; State v. Huff, 11 Nev. 17; State v. Fournier, 122 N. W. 329; Colb v. Union Co. 49 Atl. 392; State v. Thompson, 103 N. W. 377; Dungan v. State, 115 N. W. 350; People v. Derbert, 71 Pac. 564.

Prejudicial statements by counsel for state, when attorney is not reprimanded by court, and jury cautioned to disregard them, are error. State v. Trueman, 85 Pac. 1024; State v. Greenleaf, 54 Atl. 38; State v. Dunning, 85 N. W. 589; People v. Smith, 56 N. E. 1001; People v. Payne, 91 N. W. 739; Mason v. State, 81 S. W. 718; 12 Cyc. 579; Hanawalt v. State, 24 N. W. 489; People

v. Mitchell, 62 Cal. 411; Raggio v. People, 26 N. E. 377; People v. Dane, 26 N. W. 781; Sasse v. State, 32 N. W. 849; People v. Evans, 40 N. W. 473; People v. Bowers, 21 Pac. 752; People v. Ah Lén, 28 Pac. 286.

*Andrew Miller,* Attorney General, and *J. M. Johnson,* State's Attorney, for the State (*M. A. Hildreth,* of counsel.)

Exclusion of all persons other than those interested in the case where, from the character of the charge and notice of the evidence, public morality would be undoubtedly affected, does not violate the right of public trial. New York v. Hall, 51 App. Div. Rep. 57; Crisfield v. Perrine, 15 Hun. 200, 81 N. Y. 622; Grimmet v. State, 27 Tex. App. 36; State v. Brooks, 92 Mo. 542; 1 Bishop New Criminal Procedure, section 959; and see footnote to State v. Hensley, 9 L. R. A. (N. S.) 277.

When accused takes the stand and denies his guilt, the state can search his character and learn from his past record, whether his character is such as to warrant his credibility. State v. Rozum, 8 N. D. 548, 80 N. W. 477; Territory v. O'Hare, 1 N. D. 30, 44 N. W. 1003; 2 Elliott Evi., section 984; Whitley v. State, 56 S. W. 69; Lewis v. Bell, 40 S. W. 747; People v. Hite, 33 Pac. 254; Oxier v. U S., 1 Ind. Ter. 85, 38 S. W. 331; State v. Greenburg 53 Pac. 61; Roberts v. Commonwealth, 20 S. W. 267; Driscoll v. People, 47 Mich. 413, 11 N. W. 221; Hill v. State, 42 Neb. 503, 60 N. W. 916; Hanoff v. State, 37 Ohio St. 178, 41 Am. Rep. 496; Kruger v. Spachek, 22 Tex. Civ. App. 307, 54 S. W. 295.

MORGAN, C. J.   Defendant was informed against by the state's attorney of Steele county for the crime of rape in the first degree, alleged to have been committed upon the person of a female under 14 years of age on the 20th day of August, 1908. The defendant plead "not guilty," and, after a trial, the jury found him guilty of the offense charged. After making a motion for a new trial upon various grounds hereinafter to be noticed, the same was denied, and the defendant sentenced to imprisonment in the state penitentiary for a term of five years.

The grounds relied upon for a reversal of the judgment in this court are the following: (1) That he was deprived of a public trial by reason of the enforcement of an order of the court by which certain persons only could be present at the trial; (2) error in permitting the cross-examination of the defendant after objection to certain questions asked him concerning his having formerly been

arrested, and being the father of another illegitimate child, and questions concerning his having paid a certain female money to avoid prosecution; (3) misconduct of the prosecuting attorney in stating to the jury that the defendant should be convicted "in view of the fact that you have before you two girls whose lives have been ruined by this defendant;" (4) insufficiency of the evidence to sustain the verdict.

The trial court, after a jury had been impaneled and sworn, made the following order: "On motion of the state's attorney, it is ordered, in view of the nature of this case, it being what is commonly known as scandalous matter, that all persons be excluded from the room save and except the following named persons: All Jurors, officers of the court, including attorneys, litigants, and their attorneys, witnesses for both parties, and any other person or persons whom the several parties to the action may request to remain." The court had previously made an order excluding all witnesses from the court room until after they had been examined, except the witnesses for the defendant, who were permitted to be present during the progress of the state's case. The statement of the case shows that there was no objection to the order limiting the attendance of persons that were permitted to be present in the courtroom. It also appears in general terms "that the order was carried into effect and enforced" until the commencement of the arguments to the jury at the close of the testimony. The statement of the case also contains the following recital: "During the course of the trial several members of the bar were present from time to time, and one other person not included in the above order was also present part of the time by special invitation of the presiding judge." The defendant contends that, by the making and enforcement of the above order, he was deprived of his constitutional right to a public trial. It is noticeable from a reading of the record, as above recited, that it does not appear that any person was excluded from or refused admittance to the courtroom who was within the terms of the order that was made nor does it appear from the record than any one was refused admission to the courtroom except by an inference from the statement in the record that the order was enforced. It is not shown in any manner how many persons were admitted under the order, or how many were in attendance upon the trial, what was the seating capacity of the courtroom, and whether the seats were filled and the court-

room crowded or otherwise, does not appear. It does not appear how many jurors were in attendance at said term, nor how many witnesses, nor how many attorneys, nor how many litigants. It is not shown whether the defendant requested any one to be present, nor is it shown that he desired any one to be present, nor is it shown that any one was refused admittance, coming within any of the classes of persons that were permitted to attend. No restrictions were placed upon the number of persons that were permitted to remain at the request of the defendant.

It is contended in the argument that the order only permitted the defendant to make a request that certain persons who were present in the courtroom when the order was made might remain upon his request; in other words, it is contended that he was not permitted to request the attendance of any person at any later session after the making of the order. We do not think this to be a reasonable construction of the order. We think it was the intention of the trial court to permit the defendant to request any person to attend during the whole trial, and remain during any sitting of the court, and to be admitted at all sessions if his presence was desired and requested by the defendant.

In view of the meager showing as to attendance at the trial under the restrictions of the order, we cannot say, nor intimate, that the trial was not public within the meaning of the constitutional provision. If every one attended that the defendant desired to have present and all others attended that could have attended under the provisions of the order, we cannot say that the trial was not public. Every one who had business or duties in the courtroom, and every one that the defendant or state's attorney might request to be present, was permitted to be present. There is no contention nor room for contention that the order did not give the defendant the same privileges that were accorded the state's representative. There was no favoritism shown to the state nor to the defendant. It is not shown that any one was excluded by reason of the order, except by inference, as above stated. The Constitution of this state guarantees to all persons accused of crime a speedy and public trial. These provisions are for the benefit of the accused. They were enacted to forever make it impossible for public prosecutors or courts to continue the evils of secret trials as they formerly existed. These prohibitions or guaranties are construed generally to have been enacted to prevent

secret trials, and public trials in the literal sense of those words
have never been construed to be granted by these provisions. It
is never contended that the state is burdened by these provisions
with the duty of providing courtrooms of sufficient capacity to
accommodate every one who may wish to be present at trials.
These provisions are held to be subject to a reasonable construc-
tion, and circumstances may arise where certain portions of the pub-
lic may be excluded without impairing the defendant's rights un-
der these provisions. For instance, it is conceded by text-writers
and courts generally that persons of immature years may be ex-
cluded from the courtroom during the trial where the evidence re-
lates to scandalous, indecent or immoral matters. Furthermore, the
courtroom may be cleared to prevent interference with, or obstruc-
tion of, the due administration of justice. The orderly conduct
of the courts in the administration of justice is deemed to war-
rant the exclusion of the public from trials where those present
conduct themselves in a manner tending to obstruct justice, or
tending to give either the state or the defendant an unfair trial. It
is deemed better to limit the right to a public trial than that the
trial may be conducted in such a manner by reason of those present
that the rights of the parties may be prejudiced. Grimmet v.
State, 22 Tex. App. 36, 2. S. W. 631, 58 Am. Rep. 630; State v.
Hensley, 75 Ohio St. 255, 79 N. E. 462, 9 L. R. A. (N. S.) 277,
116 Am. St. Rep. 734; Lide v. State, 133 Ala. 43, 31 South. 953.

In Cooley on Const. Lim. (6th Ed.) page 373, this rule is laid
down, and has been taken as a guide in many cases that have since
involved this question: "It is also requisite that the trial be public.
By this is not meant that every person who sees fit shall in all
cases be permitted to attend criminal trials, because there are
many cases where from the character of the charge and the nature
of the evidence by which it is supported the motive to attend the
trial on the part of portions of the community would be of the
worst character, and where a regard to public morals and public
decency would require that at least the young be excluded from
hearing and witnessing the evidence of human depravity which
the trial must necessarily bring to light. The requirement of a
public trial is for the benefit of the accused, that the public may
see that he is fairly dealt with and not unjustly condemned, and
that the presence of interested spectators may keep his triers keen-
ly alive to a sense of their responsibility and to the importance

of their functions; and the requirement is fairly observed if, without partiality or favoritism, a reasonable portion of the public is suffered to attend, notwithstanding that those persons whose presence could be of no service to the accused, who would only be drawn thither by a prurrent curiosity, are excluded altogether." In State v. Hensley, 75 Ohio St. 255, 79 N. E. 462, 9 L. R. A. (N. S.) 277, 116 Am. St. Rep, 734, supra, the court in declaring an order excluding all persons, except the jury, defendant's counsel, members of the bar, newspaper men and one other person who was a witness for the defendant, said: "Perhaps, too, the character known as the 'courtroom loafer' whose attendance would be induced only by prurient curiosity, might be excluded without harm to the defendant, or prejudice to the state, although the matter of determining with certainty just who should and who should not be included in this category in the given instance, might not always be easy of solution, but should be, and, we think, necessarily and properly, left to the trial judge who is obliged to insist upon the orderly conduct of public business, and whose highest duty is securing to the parties, the defendant as well as the state, a fair and impartial trial; but the people have a right to know what is being done in their courts, and free observation and the utmost freedom of discussion of the proceedings of public tribunals that is consistent with truth and decency tends to public welfare." The court, however, held that the order in that case was too restrictive, and deprived the defendant of his constitutional right. It is to be observed, however, that the order in that case was much more restrictive than the one under consideration. In People v. Hall, 51 App. Div. 57, 64 N. Y. Supp. 433, the court, in considering an order excluding the public from the trial except persons requested to be present by the defendant or his counsel, said: "It is apparent, therefore, that, while the defendant is entitled to a 'public trial,' good morals or the exigencies of the situation may make that a relative term, without injury to the defendant and without infringement upon the sanctity of the rights granted to him; that such discretion is vested in the presiding judge, and the test is whether or not it has been adduced." In People v. Swafford, 65 Cal. 223, 3 Pac. 809, the court, in considering an order excluding all persons from the courtroom, except the judge, jurors, witnesses and persons connected with the case, said: "The word 'public' is used in the clause of the Constitution in opposition to 'secret.'

As said by Judge Cooley, it is not meant that every person who sees fit shall in all cases be permitted to attend criminal trials." In Benedict v. People, 23 Colo. 126, 46 Pac. 637, the court, in speaking of an order excluding all persons from the courtroom except members of the bar, officers of the court, students of law, and witnesses in the case, said: "In a criminal case the trial must be public, not secret, but the public trial does not necessarily contemplate that every person whose morbid curiosity for indecent details draws him thither shall have that curiosity gratified by being permitted to be present in the courtroom to listen to the recital of disgusting facts." In Abb. Tr. Br. Cr. section 157, the rule is stated in the following words: "The exclusion by the court of all persons other than those interested in the case, where, from the character of the charge and the nature of the evidence, public morality would be injuriously affected, does not violate the right to a public trial." In People v. Hartman, 103 Cal. 242, 37 Pac. 153, 42 Am. St. Rep. 108, the court, in declaring an order excluding all persons from the courtroom except the court officials and the defendant too restrictive, and that it deprived the defendant of a public trial, said: "While the right to a public trial contemplated by the Constitution does not require of courts unreasonable and impossible things, as that all persons have an absolute right to be present and witness the court's proceedings, regardless of the convenience of the court and the due and orderly conduct of the trial, yet this provision must have a fair and reasonable construction in the interest of the person accused." In all these cases the rule laid down by Judge Cooley is approved as a proper test as to who may be excluded without infringing on the constitutional rights of the accused. These cases all sanction the test that a public trial does not mean in all cases a trial where the public must be admitted without restriction, and that the words "public trial" may, and must, be given more latitude in construction as against their limited meaning; further, that courts may, where indecent and immoral acts are to be detailed, limit the attendance at trials so far as young persons are concerned, and so far as others are concerned if the defendant's friends and those whom he or the counsel request to be present are permitted to attend, if they desire. There is no contention that there is any prejudice to the defendant by reason of the enforcement of this order, as it is not shown that any person was excluded, and no prejudice will be presumed to follow the making and enforcement

of the order under the circumstances, in view of the express object of the trial judge in making it.

We have not overlooked the decision in People v. Murray, 89 Mich. 276, 50 N. W. 995, 14 L. R. A. 809, 28 Am. St. Rep. 294, relied on by the defendant. Whereas that case is authority against a limited construction of the constitutional provision, the order of exclusion which was under consideration in that case and held to have violated the right of the defendant to a public trial was far more restricted than the order now under consideration. See, also, Jackson v. Commonwealth, 100 Ky. 239, 38 S. W. 422, 1091, 66 Am. St. Rep. 336; Kugadt v. State, 38 Tex. Cr. R. 681, 44 S. W. 989; Bishop on Criminal Procedure, section 959; State v. Brooks, 92 Mo. 542, 5 S. W. 257, 300; State v. Callahan, 100 Minn. 63, 110 N. W. 342.

The defendant was a witness at the trial and testified fully concerning the charge made against him by the complaining witness, and denied specifically that he was guilty of the offense charged. Objection was made to certain questions on his cross-examination. The state's attorney interrogated him as to former arrests and other matters, and the defendant's attorney objected to such questions as beyond the limits of proper cross-examination of a defendant when on trial for a criminal offense. The cross-examination was as follows: "Q. Have you ever been arrested before Q. What for? Q. Now Henry, have you—are you the father of any child? Q. Aren't you the father of that child sitting back there—that little child? Q. Did you pay that woman $500 to settle the case? Q. Where does she live? Q. Did you ever pay her $500 for strangling her once? Q. Is it not a fact that about three years ago, at a dance, you took her by the throat and strangled her?" Each of these questions was properly objected to, and the defendant compelled to answer them—that is, each objection was overruled. We think that this cross-examination went beyond the liberal rule adopted in this state in early cases, and particularly in State v. Kent, 5 N. D. 516, 67. N. W. 1052, 35 L. R. A. 518, where the rule was elaborately stated. In that case the court said, in referring to cross-examinations in general: "Likewise it is proper to show his relation to the facts, his means of knowledge and opportunities for information, his power of observation, and his tenacity of memory; and, subject to the constitutional privilege of a witness to refuse to answer questions, the answers

to which may tend to criminate him, it is proper to show collateral facts which might tend to criminate, disgrace, or degrade the witness if such other facts tend to weaken his credibility—(citing cases). It is also well established that, when a defendant in a criminal case voluntarily takes the witness stand in his own behalf, he thereby subjects himself to the same rules of cross-examination that govern other witnesses, with the exception that his privileges are to some extent curtailed, in that he is not only required to answer any relevant and proper questions on cross-examination that may tend to convict him of the offense for which he is being tried, but he must also answer any such relevant and proper question that may tend to convict him of any collateral offense, when such answer also tends to convict him of the offense for which he is being tried, or bears upon any issue involved in such case—(citing cases)." In relation to the cross-examination of the witness for the purpose of attacking his credibility, the court said in that case: "The rule in these cases is somewhat strict, and necessarily so, because it is dangerous ground. Injustice may be done if the rule is relaxed. Where the cross-examiner seeks to impair the credibility of a witness by proving collateral crimes, he should be confined to specific acts. He may ask the witness whether or not he committed the act, or whether he has been convicted thereof, or imprisoned therefor, but manifestly the interrogatories should be so framed as to permit the witness to admit or deny the act itself. He should not for impeachment purposes be asked questions which simply suggest inference. It has repeatedly been held that a party could not be asked whether or not he had been indicted for a particular offense on the ground that an indictment did not prove guilt—(citing cases). For the purpose of proving the commission of a crime for which a party is being tried, any evidence is proper that raises a legal inference or makes it probable that the crime was committed by the accused. Not so, however, where it is sought to show a collateral crime to affect credibility. That issue is not on trial, and the jury must not be called upon to investigate it. It was not proper, then, to ask plaintiff in error in this case, when speaking about the alleged crime in connection with the bank, whether or not he was not 'accused,' etc., and whether or not it was not 'claimed' by the bank officers, etc., because all that may have been true, and yet no such crime as claimed have been committed."

In so far as defendant was asked and compelled to answer questions in regard to former arrests, the rule in the Kent Case, as above quoted, was clearly violated. Neither the questions nor the answers tended in any way to show his guilt of the offense of rape. The fact that he had paid money under some kind of a charge by the woman named did not tend to prove his guilt of the present charge, and the questions did not give him an opportunity to answer as to the truth of the charge under which the money was paid. By these questions the line of proper cross-examination was passed. We do not deem it necessary to cite authorities on this question, except State v. Kent, supra. That case has often been cited in subsequent decisions of this court, and its soundness on this point has never been questioned, although the rule has not been stated in subsequent cases with the same accuracy and fullness as in the Kent Case. The error in permitting such cross-examination would be alone ground for a new trial, and it is unnecessary to consider other assignments of error occurring at the trial. However, we deem it best to say that there was prejudicial misconduct on the part of one of the attorneys for the prosecution who was acting at the trial as special assistant state's attorney. In addressing the jury, the attorney stated that the state was entitled to a conviction "in view of the fact that you have before you two girls whose lives have been ruined by this defendant." Exception was promptly taken by the defendant's attorney to this language. The trial judge did not specifically charge or caution the jury to disregard this statement, nor did he reprimand the attorney, nor in any way make any remark as to the impropriety of the language at that time. That the statement of the attorney went beyond the limits of legitimate argument or comment is not debatable, and there is no attempt in this court to justify the remark. It is conceded that it was improper, and we deem it so clearly improper that a new trial would be granted on that ground alone. It was not comment on the evidence, but it was the independent testimony of the attorney. There was no evidence in the record that the defendant had ruined the lives of two girls, as stated by the attorney. The contention of the state in this court is that the objectionable remarks were rendered harmless by the charge of the court wherein it was stated that misstatements of the evidence by the attorneys should be disregarded, and that the jury should be governed solely by what the evidence was, and not

by the statements of the attorneys. We do not think that this general caution, given in every case, was in itself enough to necessarily remove from the mind of the jury the effect that must have been produced by the improper remark.

It is also insisted that the evidence does not justify the verdict, but consideration of this assignment is unnecessary in view of the fact that a new trial is granted upon another ground.

For the reason stated, the judgment is reversed, a new trial granted, and the cause remanded to the district court for further proceedings. All concur.

(124 N. W. 71.)

Note—Within the bounds of a judicial discretion, defendant in a criminal action may be cross-examined as to specific collateral facts for the sole purpose of affecting his credibility. Territory v. O'Hare, 1 N. D. 30, 44 N. W. 1003.

It is not error to admit proof of a collateral offense committed by the prisoner, when it is so connected with the specific offense as to tend to establish the latter. State v. Fallon, 2 N. D. 510, 52 N. W. 318. Commission by the accused of a collateral crime may be shown if it tends to prove the crime for which he is on trial, and the remoteness in time of such crime is immaterial. State v. Kent, 5 N. D. 516, 67 N. W. 567. Where a defendant in a criminal action voluntarily offers himself as a witness, he may be asked as to collateral crimes even if his answers disgrace him in the eyes of the jury. State v. Rozum, 8 N. D. 549, 80 N. W. 477; State v. Ekanger, 8 N. D. 559, 80 N. W. 482. Where evidence is not before the court upon which remarks of a state's attorney are based, it cannot be abuse of discretion to overrule objections thereto. State v. Stevens, 19 N. D. 249, 123 N. W. 888.