Katherine BONOGOFSKY and Arthur Kraft, as Administrators of the Estate of Martin Kraft, deceased, Plaintiffs and Respondents,

v.

Joe KRAFT, Defendant and Appellant.

No. 7772.

Supreme Court of North Dakota.

Sept. 29, 1958.

R. J. Bloedau, Mott, and K. W. Peterson, Carson, for plaintiffs and respondents.

Strutz, Jansonius & Fleck, Bismarck, for defendant and appellant.

MORRIS, Judge.

On July 26, 1951 Martin Kraft entered into a contract for deed with Joe Kraft for the sale and purchase of a half section of land in Grant County. The consideration was $6,420 to be paid as follows: $1,926 cash, $1,926 on January 15, 1952 and a final payment of $2,568 on January 15, 1953. No interest was to be paid by the purchaser. Martin Kraft and Joe Kraft were brothers. Martin Kraft died in October 1953. His age at the time of death was stated to be "in his early fifties." This action was commenced by Martin's administrators on July 30, 1957. They alleged that Joe Kraft failed to make the final payment of $2,568, is therefore is default under the contract, and asked that the contract be cancelled and that they be awarded immediate possession of the premises.

The defendant answered alleging that all sums mentioned in the contract have been settled and adjusted and that the defendant is entitled to a deed as provided for in the contract. He also counterclaimed and alleged as a recoupment and setoff three items: first, that Martin Kraft at the time of his death was indebted to the defendant for board, room and care from April, 1948 to the date of his death, the reasonable value of which is $40 per month, amounting to a total of $2,720; second, that for many years prior to Martin's death the defendant did custom farm work of the reasonable value of $2,300 for which the defendant has never been paid; and third, that the defendant sold to the deceased during his lifetime a Buick automobile for the sum of $600 for which the defendant has never been paid. The defendant prays for judgment on his counterclaim for a balance of $3,052.

The trial court found for the plaintiffs on all issues and decreed that the contract be cancelled subject to the defendant's right to redeem the premises on or before July 1, 1958 by making payment of the sum of $2,568, being the unpaid balance on the contract. The defendant appealed and the case is now before us for trial de novo on the record made in the court below.

After one of the administrators had testified that at the time the property of Martin Kraft had been appraised Joe Kraft had admitted in the presence of the appraisers that he owed the last payment of $2,568 on the contract and that it had not been paid to the estate, she was cross-examined by defendant's counsel. In response to his inquiries she stated that among Martin's effects she found no record of payment by Martin Kraft to the Joe Krafts for board and room, for a 1940 Buick automobile or for custom farm work.

After plaintiffs had rested Joe Kraft took the stand and testified that his brother Martin, who was unmarried, lived at the defendant's home from April 1948 until Martin's death. While there he ate

at the family table and Joe's wife did his laundry. Prior to the sale of the land involved in this action Martin Kraft farmed it. He had a half interest with Joe in the ownership of a tractor which both used. Martin also used Joe's machinery. Over the objection that the evidence was incompetent as pertaining to a transaction with the decedent Joe was permitted to testify that Martin had never paid him any compensation for board, room or laundry and had not paid for the use of Joe's farm machinery or labor involved in farming Martin's land prior to its sale to Joe. The admission of this evidence is clearly contrary to the rule which this court applied in Hughes v. Wachter, 61 N.D. 513, 238 N.W. 776, 777, 100 A.L.R. 255, wherein we said:

"the plaintiff should not have been permitted to testify as to the nonpayment by the decedent for the personal property, the subject of the action, when the action is brought to recover for the purchase price of such property."

Among the cases holding that in an action against an estate for services rendered to the deceased testimony of the plaintiff to the effect that the decedent had not paid him for such services is incompetent are Walters v. Kirkwood, 209 S.C. 470, 40 S.E. 2d 795; Ludlow v. Dwyer, 3 N.J.Super. 1, 65 A.2d 74; McCoy's Estate v. Brown, Tex.Civ.App., 268 S.W. 241.

Plaintiffs' counsel cross-examined the defendant with respect to the matters concerning which evidence had been admitted over his objection as well as matters that had otherwise been covered in Joe's direct examination. Counsel for defendant then asserted that the cross-examination had resulted in a waiver of the plaintiffs' right to object to the competency of the witness to testify further with regard to payments under the contract. The court ruled with him on this point and permitted the defendant, over objection, to testify without restraint to matters pertaining to defendant's counterclaim for board and room, the

sale of an automobile, and what the parties called 'custom farm work'. The statute that it is asserted was waived is Section 31–0103 NDRC 1943 which, with certain exceptions not pertinent here, provides that in a civil action or proceeding by or against administrators in which a judgment may be rendered for or against them neither party shall be allowed to testify against the other as to any transaction whatever with or statement by the intestate unless called to testify thereto by the opposite party.

■ It is the rule in this state that:

"Where incompetent testimony is admitted over objection, and where counsel thereafter cross-examines the witness upon the same matter, the objection is not waived." Embden State Bank v. Schulze, 49 N.D. 777, 193 N.W. 481, 482.

■ In 3 Am.Jur., Appeal and Error, Sec. 277, we find that:

"According to the rule obtaining in a majority of the jurisdictions, if incompetent evidence has been admitted against objection, and exception taken, the objecting party may cross-examine upon or otherwise combat it without waiving his right to have the exception reviewed on appeal."

By similar reasoning courts reach the conclusion that where incompetent evidence of a transaction or conversation with a decedent is admitted over objection the objecting party does not waive his rights by cross-examining with respect to the same matters. 58 Am.Jur., Witnesses, Sec. 359; 97 C.J.S. Witnesses § 248; Annotations 64 A.L.R. 1160; 107 A.L.R. 489; 159 A. L.R. 417. Section 31–0103 NDRC 1943 rendered the defendant incompetent to testify with respect to the three items of his counterclaim which are room and board, payment for the Buick automobile and payment for custom farm work. This incompetence was not waived.

When we eliminate from consideration, as we must, the defendant's testimony with respect to his transactions with his deceased brother which are the basis of his counterclaim, that counterclaim has little support in the record. Joe's wife, Helen Kraft, testified that Martin first came to live with the Joe Krafts in 1948. The first two months or so he would go back to his place and then come back to the Joe Kraft house. She said they kept Martin as one of the family, cooked for him, washed for him and baked for him. She told him several times that she should be compensated for his care. The following appears from the transcript:

"Q. What did you say and what did he say? A. There was times when he didn't say anything but just took off but he did make a remark once or twice that he was going to square it up.

"Q. Square what up? A. Me cooking for him."

She testified that the reasonable value of the board, room and care given Martin Kraft was $40 per month and that her husband never got compensated for it. She also testified that Martin worked on the farm, helped her husband and that her husband helped him, and that had been going on for many years. She also testified, without objection, that her husband sold Martin a 1940 Buick automobile for $600 and that in her opinion it had never been paid for. Her testimony amounts to a statement that as far as she knows Martin did not pay for it. She said Martin worked like a hired man, that he was a good worker and did as much work as the other workers. The Diesel tractor that was owned by Martin and her husband was used by both of them. She never filed a claim against the estate. The time for filing such claims has expired. It also appears that the defendant never filed a claim against the estate.

Joe Bockmeier, a brother of Mrs. Kraft, testified for the defendant. He corroborated Mrs. Kraft with respect to the fact that Martin lived in the Joe Kraft home from 1948 until the date of his death. He heard Mrs. Kraft say that she should be paid $40 a month at different times but Martin said nothing, just sat mute. Before Joe bought Martin's land, Joe, Martin and the witness would put in Martin's crop and Martin would go over to Joe's and help him. They exchanged work. Martin did as much work as the hired help. He was a husky man but slow. He knows that Martin bought the automobile from Joe but doesn't know whether he paid for it.

Joe Kraft operated a farm of 1,600 acres that included about 800 acres of crop. In addition to his brother Martin he hired on the average two other men. Sometimes he furnished them room and board. He sold Martin the automobile in 1951 for $600 and assigned to him the usual certificate of title.

Of some significance is a receipt introduced by the defendant. It covers the second payment on the contract but makes no mention of a final settlement. It was written by the defendant and signed by Martin. It is dated December 3, 1952 and reads as follows:

"Received from Joe Kraft the sum a $1926.00 for payment on contract for deed of West 1/2 of Sec. 13–132–85— which constitutes second payment."

The defendant would have the court believe that when he purchased Martin's farm in 1951 no consideration was given to what he now claims to be a fact that Martin owed him for custom work for a number of years on that same farm and had incurred an obligation to pay room and board since 1948.

The trial court who saw and heard the witnesses and to whose findings we give appreciable weight found that Joe Kraft was entitled to no setoff or recoupment and that he owed the third and final payment of $2,568 on the contract. This payment was due on January 15, 1953. Martin died the following October. Yet it

does not appear that Joe made any attempt to secure from Martin the deed to which he would have been entitled if he did have a valid claim for setoff or recoupment as he now contends. It appears to us that the transaction evidenced by the contract for the sale of Martin's farm to Joe was a transaction entirely separate from the mutual arrangement between the brothers by which they exchanged work and which after the sale of Martin's land they continued with Martin obtaining room and board as his main compensation for spending most of his time working for Joe. Joe paid Martin nothing for the work and labor he performed for Joe. Joe's contention that he is entitled to collect from the estate for custom farm work, most of which was performed prior to the land sale, and for board and room since 1948 during a period when his brother worked for him at least part time, is untenable. The purchase of the automobile was a transaction consummated some two years before Martin's death. A certificate of title was delivered to Martin. Martin had ample funds with which to pay for the automobile in cash. The inventory of his estate shows no encumbrances. He had over $8,000 in postal savings and bank deposits. Between October 1942 and January 1950 he had purchased U. S. Savings Bonds amounting to the value on September 14, 1954 of $6,889.25. The trial court inferred from all of the evidence and circumstances that Martin Kraft was not indebted to Joe for the purchase price of the automobile at the time of his death. We agree with the trial court that the defendant has failed to sustain his burden of proof with respect to any of the items of his counterclaim.

The judgment appealed from is dated February 15, 1958 and gave to the defendant until July 1, 1958 to redeem the premises by making payment of $2,568. This period of redemption has expired. The judgment is therefore modified to permit redemption to be made on or before April 1, 1959 and as thus modified is affirmed.

GRIMSON, C. J., and SATHRE, JOHNSON and BURKE, JJ., concur.