In the Matter of the ESTATE of Irene E. PAULSON, a/k/a Elizabeth I. Paulson, a/k/a Irene Paulson, Deceased.

**Helen P. KOLOUCH, Appellant,**

v.

**Kathryn E. BOND et al., Appellees.**

**Civ. No. 8964.**

Supreme Court of North Dakota.

June 13, 1974.

Company stock that she owned in her own right to herself and her three children, John D. Paulson, Kathryn E. Bond, and Helen P. Kolouch, in joint tenancy and in the following manner:

1. To herself and John, 91 shares of voting stock and 152 shares of non-voting stock.

2. To herself and Helen P. Kolouch, 243 non-voting shares.

3. To herself and Kathryn E. Bond, 243 non-voting shares.

The transfer was effected when Irene signed the old certificates and endorsed on them that new certificates were to be reissued as above set forth. John was present when this was done. He then delivered the stock to the president of the corporation who issued new certificates in joint tenancy in the manner ordered by Irene. The new certificates were returned to Irene and they remained in her possession during her lifetime. Irene received all of the dividends from the stock after the transfer and until her death. There was no gift tax return filed.

Irene died testate on May 5, 1970, and her will was offered for probate in county court, Cass County, North Dakota. The will had been executed March 1, 1957, and left the residuary estate, after payment of taxes and debts, to Irene's children, share and share alike. No mention of the Forum stock was made in the instrument. Her husband was living at the time Irene made and executed the will and, in paragraph 5 of said will, she stated she made no bequest to her husband, in accordance with his wishes, but that she had certain joint tenancy accounts in her name and the name of her husband and she realized that this property would pass to her husband, if he survived her, free of the will. The 729 shares of stock in joint tenancy were not listed as assets of the estate but were shown for purposes of taxation only; the stock was given a value of $300 per share.

Helen commenced an action in county court to have the shares made part of the

Bair & Brown, Mandan, for appellant.

Wattam, Vogel, Vogel & Peterson, Fargo, for appellees.

HATCH, District Judge.

In April 1968, Irene E. Paulson transferred 729 shares of Forum Publishing

assets of the estate and to have said shares reappraised. There were other contentions raised in county court that are not germane to this appeal. The county court ruled adversely to Helen, refusing to make the stock part of the assets of the estate or to compel a reappraisal of the stock. Helen appealed to the district court where the matter was tried to a jury. The jury returned a verdict holding that the transfer in joint tenancy of the certificates of stock in the Forum Publishing Company by decedent to herself and her three children in joint tenancy was valid and that the value of the non-voting stock was $374 per share, and the value of the voting stock was $748 per share.

Helen raised the following three contentions by this appeal:

1. The facts, as a matter of law, do not support a valid transfer in joint tenancy of the stock certificates in the Forum Publishing Company;

2. The trial court erred in refusing to admit a conversation between decedent and Helen relating to the stock; and

3. Counsel for John argued matters not in evidence.

As part of Helen's first contention, she alleges that the court erred in giving the following instructions:

1. That the transfer of stock ownership upon the corporation's record books and the issuance of a new certificate in the name of the donor and the donee as joint tenants, all pursuant to the instructions of the donor, is evidence of an intention to make a present gift;

2. That with reference to property transferred by an owner to himself and another in joint tenancy, the usual legal requirement of an actual delivery to the donee in order to constitute a present gift does not apply, and that the law regards possession by one joint tenant as possession for both; and

3. That acceptance of a gift by a donee may be presumed where no condition is to be performed by the donee, especially where the gift is from a parent to a child.

Helen further alleges the trial court erred in refusing to give instructions requested by her that in substance stated that there must be a valid delivery or passing of control of the stock certificates and that there can be no gift where the donor retains possession and control of such stock during her lifetime.

The court will treat the contentions of Helen in the order above set forth.

First. Was the transfer of the shares of stock in the Forum Publishing Company an invalid gift inter vivos because of the lack of intent to make a gift, lack of delivery to the donees during the lifetime of the donor, and because of the retention of possession and profits of said stock by the donor during her lifetime?

A gift is a transfer of personal property made voluntarily and without consideration. § 47–11–06, N.D.C.C.

In re Kaspari's Estate, 71 N.W.2d 558 (N.D. 1955), sets forth the following requisites for a valid gift inter vivos: (1) an intent to give; (2) delivery of the gift, either actual or constructive, and (3) an acceptance of the gift by the donee.

Helen asserts that the facts in this case show that the transfer of the stock is invalid as a gift inter vivos as there was no donative intent on the part of the donor, no actual or constructive delivery of the stock to the donees, and that there was no acceptance of the stock manifested by said donees. Irene had physical possession of the stock certificates up to and including the time of her death; she received and used the income derived from the stock; and no gift tax return was filed by her. This, coupled with Irene's will leaving all

of the residue of her estate to her children in equal shares caused Helen to conclude that no gift was intended and that the stock is properly a part of the assets of Irene's estate and should be distributed in accordance with Irene's will.

Helen supports these contentions with the following authorities: 23 A.L.R.2d 1171; In re Muckle's Estate 35 N.Y.S.2d 391 (Sup.1942); Reid v. Cromwell, 134 Me. 186, 183 A. 758 (1936); Lyons v. Freshman, 124 Mont. 485, 226 P.2d 775 (1951); In re Bush's Trust, 249 Minn. 36, 81 N.W.2d 615, 82 N.W.2d 221, (1957) [latter two cases deal with Uniform Stock Transfer Act, which Act was repealed in North Dakota in 1965 when the Uniform Commercial Code was adopted]; Kuebler v. Kuebler, 131 So.2d 211 (Fla.App.1961); Buffaloe v. Barnes, 226 N.C. 313, 38 S.E. 2d 222 (1946); McGillivray v. First Nat. Bank, 56 N.D. 152, 217 N.W. 150 (1927); and In re Berzel's Estate, 101 N.W.2d 557 (N.D. 1960).

In *Reid, Kuebler,* and *Buffaloe,* the purported donees testified that the donor in each case clearly informed them that delivery was to take effect upon the donor's death. Neither *McGillivray* nor *Berzel* involved joint tenancy transfers. Both cases involved property held between a decedent and another person in the disjunctive. A thorough reading of both cases shows that neither is in point. In the instant case, a joint tenancy was expressly created. Section 47–02–06, N.D.C.C., provides as follows:

"'*Joint tenancy interest*' *defined.*—A joint interest is one owned by several persons in equal shares by a title created by a single will or transfer, when expressly declared in the will or transfer to be a joint tenancy, or when granted or devised to executors or trustees as joint tenants."

There is no dispute that the stock certificates in question were issued to decedent and her children as joint tenants. A gift of personal property in joint tenancy must, because of the very nature of the act, be differentiated from gifts of personalty not in joint tenancy.

"The quality that differentiates a joint tenancy from other types of co-ownership is the unity of ownership of the joint tenants. Blackstone [2 Bl.Comm. 180], in a frequently quoted passage, described this quality as a four fold unity: 'the unity of interest, the unity of title, the unity of time and the unity of possession; or in other words, joint tenants have one and the same interest, accruing by one and the same conveyance, commencing at one and the same time, and held by one and the same possession.'"

Moynihan Introduction to Real Property (Cornelius J. Moynihan, 9th Ed. 1972, p. 216.)

An examination of the essential elements of a gift inter vivos as applied to the facts in this case is necessary.

*Intent.* Irene instructed John to endorse on the original stock certificates her order to have new certificates issue to herself and her children in joint tenancy. She signed the old certificates, gave them to John and requested that he have new certificates issued as per her instructions on the old certificates. This John did by handing over the old certificates to the president of the Forum Publishing Company. New stock certificates were issued as per Irene's instructions. The aspect · of fraud or undue influence was not a part of this action. What additional manifestations of a donative intent could reasonably be desired? Certainly Irene's actions cannot be out-of-hand declared to be frivolous. She was following a procedure her husband had utilized when he made a similar gift of stock to his children during his lifetime as was testified to at the trial. From a reading of the entire case, the aspect of intent to make a gift has not been rebutted. Indeed, Irene stated in her Last Will and Testament that the property she held in joint tenancy with her husband would pass to him, should he survive her, as his sole property "free of the will". This would

indicate that she had knowledge of the consequence of placing property in joint tenancy.

■ *Delivery.* When the new stock certificates were issued in the names of the decedent and her children as joint tenants, they became co-owners of the stock. It was stated by the Illinois Supreme Court in Frey v. Wubbena, 26 Ill.2d 62, 185 N.E. 2d 850, 856 (1962):

"We turn to the question of whether the acts of the intended donor amounted to consummation of his intent to make *inter vivos* gifts. In addition to donative intent, other elements must be present. The donor must part with exclusive dominion and control over the subject of the gift and there must be delivery. The decedent surrendered his exclusive right to the several items when he voluntarily placed ownership in himself and others. The rights of the co-owners were equal to his own and by the transfer of his funds into joint-tenancy obligations he gave up exclusive dominion and control. *Each of the co-owners has an equal right to possession of the evidence of title (passbook, note, certificate, etc.) and, since they cannot both have manual possession at the same time, possession by one is possession for the benefit of both.* [Citation omitted.] *We think it follows that delivery by the issuer or maker to one of the joint owners is delivery for the benefit of all and satisfies the requirement of delivery where, as here, there is donative intent."* [Emphasis added.]

The language contained in Bunt v. Fairbanks, 81 S.D. 255, 134 N.W.2d 1, 3, seems especially apropos in the instant case:

"Although donor retained possession of the certificate, he surrendered his exclusive dominion and control thereof when he had ownership placed in defendant and himself. Nothing more remained to be done to make the gift complete and absolute. It was irrevocable. Each co-owner had an equal right to possession of the certificate and since they could not both have manual possession at the same time, possession by one cotenant is, in contemplation of law, possession for both."

*Acceptance. Bunt, supra,* also states as follows, to wit:

"Regarding the element of acceptance, it appears to be the rule that, in the absence of renunciation, acceptance of a gift will be presumed when it is unaccompanied by any condition to be performed by the donee, especially where the gift is from parent to child and it operates entirely to the donee's benefit." 134 N.W.2d at 3.

We then have a set of rules which apply to gifts of property in joint tenancy that is somewhat at variance with an absolute gift where the donor does not retain an interest. The *Frey* and *Bunt* cases, *supra,* are compatible with North Dakota law. To hold otherwise in this case would be to subject to attack all joint-tenancy ownership of property and thereby create unwarranted chaos, litigation, and expense.

As the instructions of the trial court that are complained of are in keeping with the applicable law as determined by this court, they are proper instructions and the refusal to give the instructions Helen requested was proper and necessary.

■ Helen states that it was error for the trial court to refuse to admit conversations with the deceased regarding the transferring of the stock certificates. Helen made an offer of proof to the court that, had she been allowed to testify as to her conversation with her mother, said testimony would show:

" . . . this being a date after the date on which John Paulson testified he obtained his mother's signature to the stock certificates, and that in that conversation at which only the two of them were

present, although a nurse may possibly have been in the room, her mother told her that she had made a will, and that the will provided that the distribution of her estate was to be equal among the children, both as to voting and non-voting stock of the Forum, and that those were her wishes for the distribution of her property."

Section 31-01-03, N.D.C.C., provides:

"*Competency of party or officers of corporate party as to transactions or conversations with decedent—Exceptions.*—In any civil action or proceeding by or against executors, administrators, heirs at law, or next of kin in which judgment may be rendered or ordered entered for or against them, neither party, except as provided in section 31-01-04 and section 31-01-05, shall be allowed to testify against the other as to any transaction whatever with or statement by the testator or intestate, unless called to testify thereto by the opposite party. Where a corporation is a party to any proceeding mentioned in this section, no agent, stockholder, officer, or manager of such corporation, shall be permitted to testify to any transaction or conversation had with the testator or intestate."

Helen was not called to testify by the opposite party.

Helen cites St. John v. Lofland, 5 N.D. 140, 64 N.W. 930, a decision rendered by this court in 1895. The *St. John* case did not involve a conversation with a person and a "testator or intestate", but related to a conversation between a debtor of intestate's estate and a deceased administratix. The court held that such a conversation was admissible and not violative of the statute then existing. Such statute [§ 5260, Dakota Territory Compiled Laws, 1887] had language similar to that in the present § 31-01-03, N.D.C.C., including the following:

"  .   .   . neither party shall be allowed to testify against the other, as to

any transaction whatever with, or statement by, the testator or intestate, unless called to testify thereto by the opposite party.   .   .   . "

*St. John* is distinguishable then from the instant case in that *St. John* did not involve an attempt to testify to a conversation with a deceased testate or intestate.

Helen also cites Keller v. Reichert, 49 N.D. 74, 189 N.W. 690 (1922), to support her position. This case holds that heirs and other parties may testify regarding conversations with a decedent in connection with proof and probate of a Last Will and Testament of a deceased. This case did not involve a dispute where judgment could be entered for or against any executor, administrator, heirs at law, or next of kin. The instant case does involve a dispute that necessitates a judgment to be entered against the estate and an heir or heirs. If Helen prevailed, she would have received assets of a greater value than she would receive were the joint-tenancy transfer to be upheld, and John would have his interest depleted in value.

Helen also cites Trengen v. Mongeon, 206 N.W.2d 284 (N.D.1973), an action brought to set aside a conveyance of land to joint tenants by the vendors. One of the vendees was deceased. The action was not one by or against executors, administrators, heirs at law, or next of kin, but was an action between the vendors and the surviving vendee. The deceased vendee's estate was not involved. The court, in *Trengen* held that conversations with the deceased vendee about the land transaction were admissible. This was a proper ruling under the circumstances in *Trengen*, which is distinguishable upon the facts from the instant case.

In discussing § 31-01-03, N.D.C.C., this court, in Knoepfle v. Suko, 108 N.W.2d 456 (N.D.1961), stated that the "dead man's statute" is to be strictly construed and its words not to be given a meaning which, to any extent, extends their literal and ordinary connotation. Applying this

ruling to the instant case, the facts herein permit the invocation of the statute without giving the words therein anything more than their literal meaning.

In Bonogofsky v. Kraft, 92 N.W.2d 179, 182 (N.D.1958), this court stated:

"Over the objection that the evidence was incompetent as pertaining to a transaction with the decedent Joe was permitted to testify that Martin had never paid him any compensation for board, room or laundry and had not paid for the use of Joe's farm machinery or labor involved in farming Martin's land prior to its sale to Joe. The admission of this evidence is clearly contrary to the rule which this court applied in Hughes v. Wachter, 61 N.D. 513, 238 N.W. 776, 777, 100 A.L.R. 255, wherein we said:

" 'The plaintiff should not have been permitted to testify as to the nonpayment by the decedent for the personal property, the subject of the action, when the action is brought to recover for the purchase price of such property.'

"Among the cases holding that in an action against an estate for services rendered to the deceased testimony of the plaintiff to the effect that the decedent had not paid him for such services is incompetent are Walters v. Kirkwood, 209 S.C. 470, 40 S.E.2d 795; Ludlow v. Dwyer, 3 N.J.Super. 1, 65 A.2d 74; McCoy's Estate v. Brown, Tex.Civ.App., 268 S.W. 241."

If the transfer was not a valid gift, then an implied or constructive trust must have been intended. The elements of fraud and undue influence were expressly stated by Helen not to be part of the issues in the instant case.

In Bodding v. Herman, 76 N.D. 324, 35 N.W.2d 561, 563 (1948), this court stated:

"The evidence to establish an implied trust, however, must be clear and convincing. There must be a satisfactory showing of a wrongful detention of the property, or fraud, undue influence, the violation of a trust, or other wrongful act by virtue of which the party is holding title to property which he should not hold under the rules of equity and good conscience. The evidence must be strong enough to lead to but one conclusion. If the evidence is doubtful or capable of reasonable explanation upon theories other than the existence of a trust it is not sufficient to establish a trust. See 35 A.L.R. 286, 307; 45 A.L.R. 852; 80 A.L.R. 198 and cases cited. See also 2 Bogert on Trusts and Trustees, § 464".

In Wildfang-Miller Motors, Inc. v. Miller, 186 N.W.2d 581 (N.D.1971), in paragraph 1 of the syllabus, this court held:

"A constructive trust will be imposed by the courts in order to do equity and prevent unjust enrichment when title to property is acquired by fraud, duress, undue influence, or is acquired or retained in violation of a fiduciary duty."

Helen offered no evidence to show fraud, duress, or undue influence on the part of anyone, or a fiduciary duty that was violated.

■ Helen next contends that the district court erred in permitting counsel for the estate to argue matters not in evidence. She contends counsel argued that he had been counsel for the Forum Publishing Company for 25 years and that the reason the stock was divided between voting and non-voting stock was to place the voting stock in the hands of those working at the Forum. John worked at the Forum. His sister did not. Counsel for the estate asserts he argues these matters as fair inferences from the testimony of Helen and from the information contained in Helen's Exhibit No. 1. This exhibit shows the ownership of the stock in the Forum Publishing Company. It does not state whether or not those owning voting stock work for the company.

Helen testified that:

". . . So my father worked with the Black family all of my life and the Lontzes, of course, are part of the Fargo Forum family and Mrs. Lontz was a daughter of old Mr. Black, Norman B. Black. She has two sons working presently in the Forum."

Neither Exhibit No. 1 nor Helen's testimony would lead one to infer that only those working at the Forum were owners of the voting stock. Indeed, the exhibit displays the fact that Helen and her sister Kathryn own voting stock in the Forum Publishing Company and neither of them work for the corporation. Counsel's argument, unsupported by any exhibit or the facts in the case, constituted independent· testimony by counsel for the estate. State v. Nyhus, 19 N.D. 326, 124 N.W. 71 (1909), is cited by Helen to bolster her argument that counsel for the estate committed reversible error in making his argument. In *Nyhus*, the court did hold that argument of counsel, unsupported by any evidence and timely objection taken thereto, was grounds for a new trial. *Nyhus* was a criminal case and counsel for the State argued to the Jury that the State was entitled to a conviction for rape "in view of the fact that you have before you two girls whose lives have been ruined by this defendant". Counsel for the defendant immediately objected. The trial court did not specifically charge or caution the jury to disregard the statement nor did it reprimand the attorney or comment in any way on the impropriety of the statement. The court did instruct as to disregarding misstatements of counsel and that the jury was only to consider what the evidence was and not the statements of the attorneys. This instruction was held insufficient to overcome the damaging effect of the improper statement.

This court, in State v. Knudson, 21 N.D. 562, 132 N.W. 149 (1911), in paragraph 2 of the syllabus, held, in pertinent part:

"Where the defendant alleges misconduct on the part of the state's attorney in his argument to the jury, and relies on the same as ground for reversal, he must first seasonably object thereto and obtain a ruling from the trial court thereon, requesting the court to take action by reprimand to the counsel, instructions to the jury, or other suitable action . . . ."

The particular argument of estate's counsel that is objected to, and the objection and the court's ruling thereon, are as follows:

"I am sure that more than 25 years ago the Articles of Incorporation were amended to provide for voting common shares and non-voting common shares because the men and the women who were working at the Forum, who had control of the Forum, wanted as much as it was possible to do so to have the voting common shares in the hands of those men and women who were actually working at the Forum from day to day.

"I remember that over 25 years ago the chief executive officer of the Forum was a widow, Mrs. Norman D. Black. She was a fine lady. She was the publisher, the president and the chief executive officer of the Fargo Forum.

"I know that as far as the voting common shares are concerned that over a period of years most of those voting common shares have gone to the men and the women who have been working in the Fargo Forum from day to day, most of those were—

"MR. ROBERT VOGEL: I am sorry to interrupt, but I must object. There is no evidence in this case to support these statements.

"THE COURT: Isn't there an exhibit that shows the ownership of the Forum?

"MR. ROBERT VOGEL: It doesn't show who the people are, what their relationships are or whether they are widows or active in the Forum or inactive in the Forum or anything of that nature.

"MR. PHILIP VOGEL: I think these are fair inferences from all of the evidence that has been presented in this case, Your Honor.

"THE COURT: I think that we will permit counsel to proceed. As you know, wide latitude is permitted in summation."

The argument was unwarranted, as it is unsupported by the evidence in the case. However, we do not believe that the improper argument could have affected the verdict. The language contained in Hoffer v. Burd, 78 N.D. 278, 49 N.W.2d 282, 294–295 (1951), as it applies to this same type of issue, seems appropriate in this case, that is:

"The fact that counsel is guilty of misconduct in making an improper argument does not require or justify a reversal of the verdict that has been rendered unless it is likely that the misconduct affected the verdict and thus deprived the party against whom the argument was made of a fair trial. If it appears that it is not likely that such conduct affected the verdict or deprived the party against whom the verdict was rendered of a fair trial, then the verdict will not be disturbed.

"A litigant should not be deprived of a verdict in his favor and thus penalized because of the improper conduct of his counsel unless it is likely that such conduct resulted in prejudice to the adverse party and operated to deprive him of a fair trial."

In the instant case, there was more than sufficient evidence to justify the verdict without counsel's comments. For the reasons stated, the judgment of the trial court is affirmed.

ERICKSTAD, C. J., and TEIGEN, KNUDSON and PAULSON, JJ., concur.

VOGEL, J., deeming himself disqualified; LARRY HATCH, District Judge, Third Judicial District, sitting in his stead.